1  Kevin D. Reese (SBN 172992)
   *Kevin.Reese@jacksonlewis.com*
2  Michael D. Thomas (SBN 226129)
   *Michael.Thomas@jacksonlewis.com*
3  Buck N. Haddix (SBN 295334)
   *Buck.Haddix@jacksonlewis.com*
4  JACKSON LEWIS P.C.
   725 South Figueroa Street, Suite 2500
5  Los Angeles, California  90017-5408
   Telephone:  (213) 689-0404
6  Facsimile:   (213) 689-0430

7  Attorneys for Defendants
   ACADIA HEALTHCARE COMPANY, INC.;
8  and MISSION TREATMENT SERVICES, INC.

9

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| 13  PATRICIA J. RYAN, individually, and on behalf of all others similarly situated, | **CASE NO.:** |
| 14 | |
| 15                              Plaintiff, | **DEFENDANT ACADIA HEALTHCARE COMPANY, INC.'S NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453 (CAFA)** |
| 16           v. | |
| 17  MISSION TREATMENT SERVICES, INC., a California corporation; ACADIA HEALTHCARE COMPANY, INC., a Delaware corporation; and DOES 1 through 100, inclusive, | |
| 18 | |
| 19 | (Filed concurrently with Civil Case Cover Sheet; Declarations of Christy Enos, Tony Taylor and Buck N. Haddix; Corporate Disclosure Statement; and Notice of Interested Parties) |
| 20                              Defendants. | |

21

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

                                   1

1    **TO THE CLERK OF THE U.S. DISTRICT COURT FOR THE CENTRAL DISTRICT**

2    **OF CALIFORNIA, PLAINTIFF PATRICIA J. RYAN, AND HER COUNSEL OF RECORD:**

3    PLEASE TAKE NOTICE that Defendant ACADIA HEALTHCARE COMPANY, INC.

4    ("Defendant" or "Acadia") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§

5    1332(d), 1441, 1446 and 1453, and removes the above-entitled action from the Superior Court of the State

6    of California for the County of Los Angeles based on the Class Action Fairness Act of 2005 ("CAFA").

7    Acadia submits this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff

8    PATRICIA J. RYAN ("Plaintiff") and without conceding Plaintiff has pled claims upon which relief can

9    be granted.  This removal is based on the following grounds:

10    <u>**SERVICE AND PLEADINGS FILED IN STATE COURT**</u>

11    1.    On May 6, 2022, Plaintiff filed an unverified Class Action Complaint against Acadia and

12    Mission Treatment Services, Inc. ("Mission") in the Superior Court of the State of California for the County

13    of Los Angeles entitled *PATRICIA J. RYAN, individually, and on behalf of all others similarly situated,*

14    *Plaintiff, v. MISSION TREATMENT SERVICES, INC., a California corporation; ACADIA*

15    *HEALTHCARE COMPANY, INC., a Delaware corporation; and DOES 1 through 100, inclusive,*

16    *Defendants*, Case No. 22STCV15217, which sets forth the following seven (7) causes of action: (1) failure

17    to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to

18    provide rest periods; (5) waiting time penalties; (6) wage statement violations; and (7) unfair competition

19    (the "Complaint").  As stated therein, the Complaint is brought as a class action on behalf of Plaintiff and "a

20    class of all current and former non-exempt employees of Defendants within the State of California at any

21    time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of

22    the class action is provided to the class."

23    2.    Acadia first received Plaintiff's Summons, Complaint and Civil Case Cover Sheet when it

24    was served on May 11, 2022.  Declaration of Buck N. Haddix ("Haddix Decl.") at ¶ 3.  True and correct

25    copies of the Summons, Complaint, Civil Case Cover Sheet, and related court documents received by

26    Acadia on May 11, 2022 are attached as **Exhibit "A"** to the Haddix Declaration.

27    3.    On June 1, 2022, Judge David S. Cunningham III of the Superior Court of California,

28    County of Los Angeles, issued an Initial Status Conference Order and a Court Order Re: Newly Filed

DEFENDANT'S NOTICE OF
REMOVAL OF ACTION TO THE
UNITED STATES DISTRICT COURT

Case which the Court Clerk served on Plaintiff's counsel. True and correct copies of the Initial Status Conference Order, the Court Order Re: Newly Filed Case and the Clerk's Certificate of Service are attached to the Haddix Declaration as **Exhibit "B**." *Id.* at ¶ 4.

4.     On June 9, 2022, Acadia filed and served an Answer to the Complaint in Los Angeles County Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses. *Id.* at ¶ 5. A true and correct copy of Acadia's Answer is attached as **Exhibit "C"** to the Haddix Declaration.

5.     As of today, **Exhibits "A," "B"** and **"C"** to the Haddix Declaration constitute all of the pleadings that have been filed or served in this action, and no further proceedings have occurred in the state court. *Id.* at ¶ 6.

## TIMELINESS OF REMOVAL

6.     This Notice of Removal has been filed within thirty (30) days after Acadia was first served with a copy of Plaintiff's Summons and Complaint on May 11, 2022. *Id.* at ¶ 3. Therefore, it has been filed within the time period mandated by 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received.").

## VENUE

7.     This action was filed in the Superior Court in and for the County of Los Angeles. Thus, pursuant to 28 U.S.C. § 1441(a), Acadia is removing this action to the United States District Court for the Central District of California as the district "embracing the place where [the] action is pending."

## REMOVAL BASED ON CLASS ACTION FAIRNESS ACT

8.     Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332 *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

///

///

DEFENDANT'S NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT

9.      In addition, CAFA provides for jurisdiction in the district courts only where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities.  28 U.S.C. § 1332 (d)(5).

10.     As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, the matter in controversy – based on the allegations in the Complaint – exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from one of the Defendants.  *See* 28 U.S.C. §§ 1332(d) and 1453.[1]  Furthermore, Acadia is not a State, State official, or other governmental entity.

**A.      THE PUTATIVE CLASS CONTAINS MORE THAN 100 MEMBERS.**

11.     CAFA provides that the district courts shall not have jurisdiction over class actions where "the number of members of all proposed plaintiff classes in the aggregate is less than 100."  28 U.S.C. § 1332(d)(5).

12.     The class definition set forth by Plaintiff in the Complaint includes non-exempt employees of Acadia "and any of its respective subsidiaries or affiliated companies within the State of California."  Haddix Decl. at ¶ 3, **Exhibit "A"** ["Complaint"] at ¶ 1.[2]  Here, Acadia has identified in excess of 550 individuals that fit Plaintiff's definition of the class who are or were employed by Acadia's subsidiaries including Mission as non-exempt employees in the State of California between May 6, 2018 (four years prior to the filing of the Complaint) and the present (collectively referred to herein as "Putative Class Members" or the "Putative Class"; the period between May 6, 2018 and the present is referred to herein as the "Putative Class Period").  Declaration of Tony Taylor ("Taylor Decl.") at ¶ 4.[3]  Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

---

[1]      Acadia does not need the consent of the other defendant to properly remove this action.  *See* 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the United States in accordance with section 1446 . . . by any defendant without the consent of all defendants.").

[2]      Acadia denies each and every allegation set forth by Plaintiff in the Complaint and denies that Plaintiff or Putative Class Members are entitled to any compensatory or statutory damages, injunctive relief, restitution, civil penalties, attorneys' fees, or any other relief.  Acadia also denies that this action can proceed as a class action. Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the Complaint.

[3]      Although the Putative Class Period spans from May 6, 2018 to the present, all calculations used in this Notice of Removal are based on payroll data for Putative Class Members who worked for Acadia's subsidiaries in California from September 7, 2020 to June 3, 2022.  *See* Taylor Decl. ¶¶ 4, 5.

**B.    NONE OF THE NAMED DEFENDANTS ARE GOVERNMENT ENTITIES.**

13.    Acadia is not a State, a State official, or any other governmental entity.  Declaration of Christy Enos ("Enos Decl.") at ¶ 3.

14.    Upon information and belief, the other Defendant – Mission Treatment Services, Inc. – is not a State, a State official, or any other governmental entity.  *Id.* at ¶ 7.

**C.    MINIMAL DIVERSITY IS SATISFIED UNDER CAFA.**

15.    The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. 1332(a)-(c).  CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens.  28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant"); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal").

16.    For individuals, citizenship is determined by a person's domicile.  *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986).  "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship.  *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008).  Furthermore, a person's intention to remain may be established by his or her place of employment.  *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.* (C.D. Cal. June 12, 2017, No. CV 17-02871-BRO (SSx)) 2017 U.S. Dist. LEXIS 90131,

1  at *10) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to

2  remain in California.").

3     17.   Acadia is informed and believes that Plaintiff, at the time this action was commenced,

4  and still is, a resident and citizen of the State of California.  **Exhibit "A"** ["Complaint"] at ¶ 2.

5     18.   For purposes of removal under CAFA, a corporation is a citizen of any state where it is

6  incorporated and of the state where it has its principal place of business.  28 U.S.C. § 1332(c).  With

7  respect to ascertaining a corporation's principal place of business, the United States Supreme Court has

8  adopted the "nerve center test."  *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010).  Under the nerve

9  center test, a corporation's principal place of business is where a corporation's high-level officers direct,

10  control and coordinate the corporation's activities.  *Id.*  A corporation can only have one "nerve center."

11  *Id.* at 93-94.  In evaluating where a corporation's "nerve center" is located, courts will look to the center

12  of overall direction, control, and coordination of the company and will no longer weigh corporate

13  functions, assets, or revenues in each state.  *Id.*

14     19.   At the time Plaintiff filed the Complaint and presently, Acadia has been a corporation

15  organized under the laws of the State of Delaware.  Enos Decl. at ¶ 4.  At all relevant times, Acadia's

16  company headquarters, and thus its principal place of business, has been in the State of Tennessee.  *Id.*

17  Acadia's headquarters in Franklin, Tennessee is where the majority of its executive, administrative,

18  financial and management functions are conducted, and from where the majority of its high-level officers

19  direct, control, coordinate and control the company's operations and activities.  *Id.* at ¶ 5.  Most of Acadia's

20  executive officers maintain their offices in the State of Tennessee.  *Id.*  Accordingly, for purposes of

21  removal under CAFA, Acadia is a citizen of the States of Delaware and Tennessee, and is not a citizen of

22  the State of California.

23     20.   Given the above, minimal diversity exists under CAFA because at least one member of the

24  Putative Class (Plaintiff) was, at the time this action was commenced – and is still believed to be – a citizen

25  of the State of California, while at least one Defendant (Acadia) was – and still is – a citizen of the States

26  Delaware and Tennessee.[4]  28 U.S.C. § 1332(d)(2).

27

28

---

[4]    The citizenship of the remaining Defendant – Mission Treatment Services, Inc. – is immaterial for the purposes of determining whether CAFA's minimal diversity requirements are satisfied.  *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) ("under CAFA, complete diversity is not required; 'minimal diversity' suffices"); *see also* 28

6

**D.    THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000 BASED ON A PLAUSIBLE READING OF THE ALLEGATIONS OF THE COMPLAINT.**

21.    Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6).  Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)."  Sen. Jud. Comm. Rep., S. REP. 109-14, at 42.  Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . .  Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly . . . .").

22.    In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of her claims.  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 993, 1001 (C.D. Cal. 2002) (*citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim")).  Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied.  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843, n.1 (9th Cir. 2002) (*citing Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969)).

23.    Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation."  *Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007).  Rather, a defendant seeking

---

U.S.C. § 1441(a) ("For purposes of removal under this Chapter, the citizenship of defendants used under a fictitious name shall be disregarded.").

removal must prove by a preponderance of the evidence that the aggregate amount in controversy exceeds the jurisdictional minimum. *Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 993-94 (9th Cir. 2022) (finding that the district court erred in imposing – both explicitly and in its analysis – a presumption against CAFA jurisdiction, and holding instead that the defendant was only required to show the amount in controversy by a preponderance of evidence); *Arias v. Residence Inn*, 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven"); *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *see Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.").

24.     In *Dart Cherokee Basin Operating Company, LLC v. Owens*, the United States Supreme Court held that, whereas here, the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." 135 S. Ct. 547, 554 (2014) (emphasis added).  Following *Dart*, the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions," which need not be proven. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 963 (9th Cir. 2020) (citations and internal quotation marks omitted); *Arias*, 936 F.3d at 922, 925 (defendant may rely on reasonable assumptions in estimating amount in controversy, which "need not be proven").  Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.*, 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart*, 135 S. Ct. at 554.  On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal.  *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183-84 (9th Cir. 2015).

25.     Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise.  *See Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Arreola v. The Finish Line*, No. 14- CV-03339-LHK, 2014 U.S. Dist. LEXIS 170464, at *12 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation— when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

26.     While Plaintiff does not allege a specific amount in damages, her Complaint was filed as an "unlimited" jurisdiction civil case on behalf of the Putative Class.  As such, Plaintiff is claiming the monetary damages and restitution she is seeking exceeds the $25,000 minimum jurisdiction limits of the California Superior Court,[5] which is confirmed by the fact that she stated the "[Amount in Controversy Exceeds $25,000.00]" on her Civil Case Cover Sheet.  Haddix Decl. at ¶ 3, **Exhibit "A"** [Civil Case Cover Sheet].  Plaintiff further contends that her claims "are typical of those claims which could be alleged by any Class Members, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions," and that "Plaintiff and Class Members sustained injuries and damages arising out of and caused by Defendants' common course of conduct."  Complaint at ¶ 26.  Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking at least $25,000 [the unlimited jurisdictional amount] per Putative Class Member, which places over **$13,750,000** in controversy ($25,000 x 550

---

[5]     *See* California Code of Civil Procedure §§ 86(a) and 88.

Putative Class Members).[6] Taylor Decl. at ¶ 4; *see Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 689 (2006) (finding jurisdictional amount met where complaint sought no specific amount in damages but pled the amount in controversy to exceed $25,000 and there were 1,160 class members).

27. In the alternative, and without admitting Plaintiff could recover any damages whatsoever, a plausible reading of the causes of action alleged in the Complaint[7] also conservatively places an aggregate amount in controversy exceeding $5,000,000, exclusive of attorneys' fees, interest, and costs, as follows:

a. <u>First Cause of Action – Failure to Pay Overtime Wages</u>: Plaintiff alleges that she and Putative Class Members, "at times, worked for Defendants during shifts that consisted of more than eight (8) hours in a workday and/or more than forty hours in a workweek, and/or seven (7) consecutive workdays in a workweek, without being paid overtime wages for all hours worked as a result of, including but not limited to, Defendants failing to accurately track and/or pay for all minutes actually worked at the proper overtime rate of pay." Complaint at ¶ 34. Given these purported violations, Plaintiff claims she and Putative Class Members are entitled to recover overtime wages "at the rate of no less than one and one-half times the regular rate of pay" for "[a]ny work in excess of eight hours in one workday and any work in excess of forty hours in one workweek," and "at the rate of no less than twice the regular rate of pay" for "[a]ny work in excess of 12 hours in one day" and "in excess of eight hours on any seventh day of a workweek." *Id.* at ¶¶ 32, 33. Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one hour of overtime wages per week for all Putative Class Members, which would place over **$1,507,275** in controversy in connection with her overtime claim ($31.50 overtime rate [$21.00[8] x 1.5] x 1 hour per week x 47,850 workweeks).[9] Taylor Decl. at ¶ 5.

---

[6] Although the Putative Class Period spans from May 6, 2018 to the present, the fact that Acadia only includes potential exposure for less than two years – from September 7, 2020 to June 3, 2022 – further demonstrates how conservatively the amount in controversy was calculated for purposes of this removal.

[7] *See e.g. Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

[8] For purposes of this Notice of Removal, Acadia conservatively utilized the combined average hourly rate earned by Putative Class Members from September 7, 2020 to June 3, 2022 during the Putative Class Period rounded down to the nearest dollar ($21.00), unless otherwise indicated. Taylor Decl. at ¶ 5.

[9] The majority of the Putative Class Members are full time employees that typically work eight hours per day, five days per week. An average year for a full-time employee contains approximately 250 workdays and 50 workweeks. The period of September 7, 2020 to June 3, 2022, therefore, contains a total of approximately 433 workdays and 87

b.      <u>Second Cause of Action – Failure to Pay Minimum Wages</u>: Plaintiff claims that "Defendants failed, at times, to accurately track and/or pay for all hours actually worked at [Plaintiff and Class Members'] regular rate of pay that is above the minimum wage," and that "Plaintiff and Class Members are entitled to recover the full amount of unpaid minimum wages [and] liquidated damages." Complaint at ¶¶ 40, 42.  Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one hour of minimum wage per week for all Putative Class Members, which would place over **$1,052,700** in controversy in connection with her minimum wage claim ($11.00[10] minimum hourly wage rate x 1 hour per week x 47,850 workweeks plus an equal amount in liquidated damages).  Taylor Decl. at ¶ 5.

c.      <u>Third Cause of Action – Failure to Provide Meal Periods</u>: Plaintiff alleges that she and Putative Class Members "were, at times, not provided complete, timely 30-minute, duty-free uninterrupted meal periods every five hours of work without waiving the right to take them, as permitted."  Complaint at ¶ 47.  Plaintiff further asserts that "Defendants failed to provide one (1) additional hour of pay at the Class Member's regular rate of compensation on the occasions that Class Members were not provided compliant meal periods," and that "Plaintiff and Class Members are entitled to recover the full amount of their unpaid additional pay for unprovided compliant meal periods."  *Id.* at ¶¶ 47, 50.  Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one meal period premium per week for all Putative Class Members, which would place over **$1,004,850** in controversy in connection with her meal period claim ($21.00 hourly rate x 1 meal period per week x 47,850 workweeks).  Taylor Decl. at ¶ 5.

d.      <u>Fourth Cause of Action – Failure to Provide Rest Periods</u>: Plaintiff alleges that she and Putative Class Members "were, at times, not authorized or permitted to take complete, timely 10-minute, duty-free uninterrupted rest periods every four (4) hours of work or major fraction thereof" and that "Defendants failed to provide one (1) additional hour of pay at the Class Member's regular rate of compensation on the occasions that Class Members were not authorized or permitted to take compliant rest

---

workweeks.  Accordingly, a conservative estimate of the total workweeks worked by the Putative Class Members during the Class Period is 47,850 (550 employees x 87 workweeks).  Taylor Decl. at ¶ 5.

[10]      For purposes of calculating potential minimum wage damages in this Notice of Removal, Acadia conservatively utilized the lowest applicable minimum wage rate in effect during the Putative Class Period ($11.00 per hour).  *See* California Department of Industrial Relations History of California Minimum Wage Chart (https://www.dir.ca.gov/iwc/minimumwagehistory.htm).

periods." Complaint at ¶ 55. Plaintiff further alleges that "Plaintiff and Class Members are entitled to recover the full amount of their unpaid additional pay for unprovided compliant rest periods." *Id.* at ¶ 58. Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one rest period premium per week for all Putative Class Members, which would place over **$1,004,850** in controversy in connection with her rest period claim ($21.00 hourly rate x 1 rest period per week x 47,850 workweeks). Taylor Decl. at ¶ 5.

e.    Sixth Cause of Action – Failure to Provide Accurate Wage Statements: Plaintiff alleges that "Defendants [knowingly, intentionally, and willfully] failed to comply with Labor Code section 226, subdivision (a) by adopting policies and practices that resulted in their failure, at times, to furnish Plaintiff and Class Members with accurate itemized statements." Complaint at ¶ 70. Given these purported violations, Plaintiff claims she and Putative Class Members "are entitled to recover $50 for the initial pay period during the period in which violation of Labor Code section 226 occurred and $100 for each violation of Labor Code section 226 in a subsequent pay period, not to exceed an aggregate $4,000.00 per employee." *Id.* at ¶ 73. During the one-year statute of limitations period mandated under Labor Code section 226 (*i.e.*, May 6, 2021 to the present), at least 230 Putative Class Members received in excess of 6,500 bi-weekly wage statements. Taylor Decl. at ¶ 6. Thus, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over **$638,500** in controversy in connection with her wage statement claim ($50 per first wage statement x 230 Putative Class Members who worked between May 6, 2021 and June 3, 2022, plus $100 per each subsequent wage statement x 6,270 pay periods worked by Putative Class Members between May 6, 2021 and June 3, 2022, up to a maximum of $4,000 per Putative Class Member). *See* Labor Code § 226(e)(1); *see also Moppin v. Los Robles Reg'l Med. Ctr.*, No. EDCV 15-1551 JGB (DTBx), 2015 U.S. Dist. LEXIS 129574, at *10 (C.D. Cal. Sep. 24, 2015) (district court finding that a 100% violation rate was justified because the plaintiff there asserted in her complaint that "at all relevant times herein, defendants intentionally and willfully failed to furnish plaintiff and the class members with accurate wage statements," thereby accusing defendants of "issuing inaccurate wage statements 'at all times' and in regards to both Plaintiff and the class members"); *Lucas*, 2018 U.S. Dist. LEXIS 78510, at *25 (noting that "it is not unreasonable to assume that, with this many violations alleged by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant").

DEFENDANT'S NOTICE OF
REMOVAL OF ACTION TO THE
UNITED STATES DISTRICT COURT

28.     Plaintiff also seeks an unspecified amount of attorneys' fees in connection with her putative class and collective claims, which the Court must consider and include in the amount in controversy.  Complaint at ¶¶ 18, 36, 42, 50, 58, 74, Prayer for Relief.  *Solorzano v. Alsco Inc.*, 2021 U.S. Dist. LEXIS 129517 at \*3 (C.D. Cal. July 12, 2021) ("Future attorney's fees must be included in the amount in controversy.") (citations omitted).  Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more.  *See, e.g.*, *McGuigan v. City of San Diego,* 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of \$1.6 million); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 287, 296 (2010) (affirming \$558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of \$435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal).  Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."  *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Lucas*, *supra*, 2018 U.S. Dist. LEXIS 78510 at \*32 ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy"); *Baker v. Tech Data Corp.*, 2022 U.S. Dist. LEXIS 66950 at \*4 (C.D. Cal. Apr. 11, 2022) ("Recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours."); *Solorzano*, *supra*, 2021 U.S. Dist. LEXIS 129517 at \*3-4 (demonstrating courts regularly adopting a \$300 per hour rate for attorneys' fees in employment actions).

29.     "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275 at \*23 (N.D. Cal. Jan. 2, 2014); *see also Herrera v. Carmax Auto Superstores Cal., LLC*, No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729 at \*12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark'

25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.,* No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856 at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975 at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims").

30.    The Court should therefore consider attorneys' fees of at least **$1,302,043**, a conservative estimate at 25% of the aggregate amount in controversy calculated in Paragraph 27 above. *See, e.g.*, *Oda v. Gucci Am., Inc.,* 2015 U.S. Dist. LEXIS 1672 at *11-13 (C.D. Cal. 2015) (finding the defendant's assumptions regarding attorneys' fees to be "reasonable" on removal where the defendant stated "Plaintiffs would recover a 25 percent fee" totaling "$1,329,245," based on "the amount in controversy before attorneys' fees" of "$5,316,978").

31.    Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiff's claims, it is plausible that the aggregate amount in controversy in connection with Plaintiff's putative class claims (**$6,510,218**[11]) surpasses the $5,000,000 jurisdictional threshold required under CAFA.

**NOTICE TO ALL PARTIES AND STATE COURT**

32.    In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the Los Angeles County Superior Court.  Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

///
///
///
///

---

[11]    This amount does not include potential damages for Plaintiff's fifth cause of action for failure to pay all wages due upon termination, which would further increase the amount in controversy in connection with Plaintiff's putative class claims.

DEFENDANT'S NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT

## **CONCLUSION**

33.     Based on the foregoing, Acadia hereby removes the above-captioned action from the Los Angeles County Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453), and respectfully requests that this Court retain jurisdiction for all further proceedings.


Dated:  June 10, 2022                    JACKSON LEWIS P.C.


                                     By:     */s/ Buck N. Haddix*_____
                                             Kevin D. Reese
                                             Michael D. Thomas
                                             Buck N. Haddix

                                             Attorneys for Defendants
                                             ACADIA HEALTHCARE COMPANY, INC.;
                                             and MISSION TREATMENT SERVICES, INC..

DEFENDANT'S NOTICE OF
REMOVAL OF ACTION TO THE
UNITED STATES DISTRICT COURT