O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| PATRICIA J. RYAN,<br><br>            Plaintiff,<br><br>    v.<br><br>MISSION TREATMENT SERVICES, INC., et al.,<br><br>            Defendants. | Case № 2:22-cv-04013-ODW (MARx)<br><br>**ORDER GRANTING MOTION TO REMAND [11]** |

## I. INTRODUCTION

On May 6, 2022, Plaintiff Patricia J. Ryan filed this putative class action in the Superior Court of California, County of Los Angeles against Defendants Mission Treatment Services, Inc. and Acadia Healthcare Company, Inc. (Decl. Buck N. Haddix ¶ 2, Ex. A ("Compl."), ECF No. 1-1.) On June 10, 2022, Acadia removed the action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (Notice of Removal ("NOR") ¶¶ 8–10, ECF No. 1.) Ryan now moves to remand the action for lack of subject matter jurisdiction. (Mot. Remand ("Motion" or "Mot."), ECF No. 11.) For the reasons discussed below, the Court finds that Acadia fails to establish by a preponderance of the evidence that the amount in controversy exceeds

$5 million. Accordingly, the Court **GRANTS** Ryan's Motion and **REMANDS** the case.[1]

## II. FACTUAL BACKGROUND

Ryan brings this class action on behalf of herself and a putative class of all current and former non-exempt employees of Defendants whom Defendants employed in California at any time during the applicable limitations period. (Compl. ¶ 20.) Ryan asserts seven causes of action against Defendants, all arising from the wage-and-hour provisions of the California Labor Code and applicable Wage Orders of the California Industrial Welfare Commission: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) waiting time penalties; (6) wage statement violations; and (7) unfair competition. (*Id*. ¶¶ 30–79.) Ryan's Complaint contains generalized allegations that Defendants committed these violations but does not contain any case-specific facts describing the events and circumstances that led to the alleged violations. (*See generally id*.) Moreover, Ryan does not expressly allege the specific amounts of damages she or the class incurred. (*See generally id*.)

On June 10, 2022, Acadia removed the action to this Court, alleging that this Court has subject matter jurisdiction under CAFA. (NOR ¶ 33.) Ryan now moves to remand, arguing that Acadia relies on "baseless" violation rates and therefore fails to meet its burden of establishing establish that the amount in controversy requirement under CAFA is satisfied. (Mot. 8.) Acadia opposes the Motion and argues that a sufficient amount is in controversy because Acadia calculated the alleged violation rates based on assumptions derived from the Complaint and the declaration of Acadia's Director of Payroll—assumptions Acadia asserts are conservative and reasonable.[2] (*See* Opp'n to Mot. ("Opp'n") 14–22, ECF No. 13.)

---

[1] Having carefully considered the papers in connection with the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[2] The declaration of Acadia's Director of Payroll provides evidence about the number of employees and workweeks at issue during the applicable limitations period. (*See* Decl. Tony Taylor ("Taylor

### III. LEGAL STANDARD

CAFA provides federal courts with jurisdiction over a purported class action if all of the following requirements are met: (1) the amount in controversy exceeds $5 million, (2) at least one putative class member is a citizen of a state different from any defendant, and (3) the putative class exceeds 100 members. 28 U.S.C. §§ 1332(d)(2), (5). The removing defendant bears the burden of establishing federal jurisdiction, "including any applicable amount in controversy requirement." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 682–83 (9th Cir. 2006) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). However, unlike cases removed under diversity jurisdiction, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

Although "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," when the allegation is challenged, "[e]vidence establishing the amount is required." *Id*. "[B]oth sides submit proof," and the court decides whether the defendant has demonstrated, by a preponderance of the evidence, that the amount in controversy requirement has been satisfied. *Id*. at 88. Such evidence may include "affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra v. Manheim Invs. Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (internal quotation marks omitted) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

Whether the defendant satisfies this requirement is "to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id*.

---

Decl."), ECF No. 1-3.) Although Ryan objects to this declaration, (Pl.'s Evidentiary Obj., ECF No. 11-2), the Court remands the case on the basis of insufficient information about the violation rates, not insufficient evidence of the number of employees and workweeks. Accordingly, Ryan's objection is moot.

at 1198. "[M]ere speculation and conjecture, with unreasonable assumptions" cannot suffice. *Id*. at 1197.

## IV. DISCUSSION

The issue for the Court to resolve is whether Acadia demonstrates that over $5 million is in controversy as required by CAFA.[3] (*See* Mot. 10–23.) "In determining the amount in controversy, courts first look to the complaint." *Ibarra*, 775 F.3d at 1197. Here, Ryan does not allege that either she or the class incurred any specific amounts of damages. (*See generally* Compl.) When federal jurisdiction is challenged and the amount of damages is not evident from the face of the complaint, "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million." *Ibarra*, 775 F.3d at 1197 (citing *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013)).

Acadia aggregates calculations for the alleged unpaid overtime, minimum wage, meal break, and rest period claims, as well as attorney's fees, and asserts an amount in controversy of $6,510,218. (*See* NOR ¶¶ 27–31.) In particular, Acadia calculates the amounts placed in controversy by these claims to be:

- $1,507,275 for the unpaid overtime claim, based on a $31.50 hourly rate, 47,850 workweeks, and a violation rate of "one hour of overtime wages per week for all Putative Class Members." (*Id*. ¶ 27.a.)
- $1,052,700 for the unpaid minimum wage claim, based on a $11 hourly rate, 47,850 workweeks, and a violation rate of "one hour of minimum wage per week for all Putative Class Members," plus an "equal amount in liquidated damages." (*Id*. ¶ 27.b.)

---

[3] Ryan asserts in passing that Acadia fails to establish minimal diversity without providing any further analysis or support for its conclusion. (Mot. 8.) The Court "decline[s] to address this undeveloped argument, which is not supported by citations to the record, argument, or any legal authority." *Ventress v. Japan Airlines*, 747 F.3d 716, 723 n.8 (9th Cir. 2014).

1     • $1,004,850 for the meal break claim, based on a $21 hourly rate, 47,850 workweeks, and a violation rate of "one meal period premium per week for all Putative Class Members." (*Id.* ¶ 27.c.)

    • $1,004,850 for the rest period claim, based on a $21 hourly rate, 47,850 workweeks, and a violation rate of "one rest period premium per week for all Putative Class Members." (*Id.* ¶ 27.d.)

    • $638,500 for the inaccurate wage statement claim, based on "$50 per first wage statement x 230 Putative Class Members who worked between May 6, 2021 and June 3, 2022, plus $100 per each subsequent wage statement x 6,270 pay periods worked by Putative Class Members between May 6, 2021 and June 3, 2022, up to a maximum of $4,000 per Putative Class Member." (*Id.* ¶ 27.e.)

    • $1,302,043 in attorney's fees, based on "25% of the aggregate amount in controversy" for the above claims. (*Id.* ¶ 30.)

(*See* Taylor Decl. ¶¶ 4–6, ECF No. 1-3.)

These calculations do not satisfy Acadia's burden because the violation rates are arbitrary. In calculating the amounts in controversy for the unpaid overtime, minimum wage, meal break, and rest period claims, Acadia assumes a rate of one violation per week for each putative class member—that is, one unpaid hour of overtime, one unpaid hour of minimum wage, one unpaid meal break premium, and one unpaid rest break premium per week. (*See* Opp'n 16–21.) Acadia characterizes this as a 20% violation rate for the meal break and rest period claims. (*See id.* at 16–18). Acadia further observes that one violation per week means that every wage statement contained at least one inaccuracy and therefore asserts a 100% violation rate for the wage statement claim. (*See id.* at 21.)

"As seemingly is always the case in wage-and-hour lawsuits attempting to find their way to federal court, violation rates are key to the calculations necessary to reach the $5,000,001 amount-in-controversy figure CAFA requires." *Toribio v. ITT Aerospace Controls LLC*, No. 19-cv-5430-GW (JPRx), 2019 WL 4254935, at *2

(C.D. Cal. Sept. 5, 2019). Here, Acadia errs in effectively assuming a uniform rate of one violation per week for each claim. (*See* NOR ¶ 27.) Whether this violation rate is characterized as 20% or 100%, the absence of any case-specific facts or allegations in the record makes Acadia's assumption an arbitrary one, and Acadia's argument "amounts to little more than plucking a violation rate out of the air and calling it reasonable." *Gonzalez v. H & M Hennes Mauritz L.P. et al*, No. 21-cv-01611-JLS (JDE), 2022 WL 179292, at *4 (C.D. Cal. Jan. 20, 2022) (internal quotation marks omitted) (quoting *Toribio*, 2019 WL 4254935, at *3). Without the benefit of any details about the nature of the violations, the present Motion to Remand is, as one court put it, little more than a "routine . . . exercise in mathematical fantasyland." *Toribio*, 2019 WL 4254935, at *3.

Ryan's minimum wage claim provides a helpful example of the importance of ensuring that violation rate assumptions are rooted in the realities of each specific case. Oftentimes, an employee claims a failure to pay minimum wage when the employer pays the employee a proper hourly rate or piece rate for certain tasks but fails to pay anything at all for certain other tasks. For example, the utility workers in *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 317 (2005), were paid for their time in the field but not for their time traveling between work sites. In such a case, the number of unpaid hours might fall anywhere between one and twenty or more per week, depending on how much time the employees spent traveling between work sites and performing other unpaid tasks. *See id.* at 318. In another California minimum wage case, a school district required a part-time teacher to spend twenty minutes of unpaid time preparing for every hour spent teaching. *Sheppard v. N. Orange Cnty. Reg'l Occupational Program*, 191 Cal. App. 4th 289, 295 (2010). For a part-time employee teaching fifteen hours each week, this preparation time would correspond to five unpaid hours per week. The *Armenta* and *Sheppard* cases demonstrate that the number of unpaid hours per week is highly dependent on the facts and circumstances of each individual case. Here, absent any case-specific allegations or evidence, the

Court has no way of knowing whether *any* number of unpaid hours—0.1, 1, 10, 20, or more, or less—is a reasonable assumption.

Acadia contends that the Declaration of Tony Taylor, Acadia's Director of Payroll, provides a sufficient evidentiary foundation for the assumptions underlying these calculations. (Opp'n. 14–15.) However, the Taylor Declaration is focused primarily on the number of Acadia employees, the number of at-issue workweeks, and the average hourly pay rate of the class. (Taylor Decl. ¶¶ 4–6.) None of this information allows the Court to reasonably infer any meaningful violation rate for any of Ryan's claims.

Acadia alternatively asserts an amount in controversy calculation of $13,750,000 based on damages per class member in the amount of $25,000, the minimum amount required for unlimited civil jurisdiction in California state court. *See* Cal. Code Civ. Proc. §§ 86(a), 88. The Court finds this alternative amount to be unsubstantiated because Acadia simply assumes that each putative class member is seeking the California state court jurisdictional minimum. (*See* NOR ¶ 26.) Yet, Ryan alleges nothing of the sort in her Complaint. (*See generally* Compl.); *cf. Abrego Abrego*, 443 F.3d at 689 (permitting the jurisdictional-minimum assumption to support a showing of the amount in controversy where the plaintiff's complaint clearly alleged "the amount in controversy in compensatory damages for *each* plaintiff exceeds the minimum jurisdictional limits of this Court").

While some other courts have attempted to fix violation rates in the face of a vague, mostly boilerplate pleading such as Ryan's, this Court respectfully diverges from that approach and instead follows the approach described by the court in *Toribio*, which observed that, when "[f]aced with a vague pleading, it seems to this Court that the much-more-sensible route would be to try to pin Plaintiff down, in state court . . . with respect to what the Complaint's allegations actually mean with respect to violation rates." *Toribio*, 2019 WL 4254935, at *3. This Court agrees that this route is more sensible. Acadia is free to conduct discovery in state court to uncover

the case-specific factual basis of Ryan's claims, and armed with this information, Acadia can then take appropriate action. At this juncture, however, Acadia fails to carry its burden to demonstrate by a preponderance of the evidence that over $5 million is in controversy.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Ryan's Motion, (ECF No. 11), and **REMANDS** this case to the Superior Court of California for the County of Los Angeles, 312 North Spring Street, Los Angeles, California 90012, Case No. 22STCV15217. All dates and deadlines are **VACATED**. The Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

September 19, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**